26441, 26447.   PARTAIN v. MADDOX; and vice versa.

ARGUED APRIL 14, 1971—DECIDED MAY 20, 1971.

*Arthur K. Bolton, Attorney General, Harold N. Hill, Jr., Executive Assistant Attorney General, Robert J. Castellani, Assistant Attorney General,* for appellant.

*George G. Finch,* for appellee.

GRICE, Justice. The substantial issue in this appeal and cross appeal involves whether a purported resignation of a member of the State Board of Pardons and Paroles is valid. The appeal (case number 26441), by J. O. Partain, Jr., emanates from a judgment rendered in an action filed in the Superior Court of Cobb County by Joseph G. Maddox (sometimes hereinafter referred to as Member Maddox), originally against only J. O. Partain, Jr., as chairman of that board and individually. The cross appeal (case number 26447) by Member Maddox arises from the same judgment. In the enumeration of errors, the appellant in the main appeal takes the position that the resignation is valid, while the appellant in the cross appeal avers that it is void. The judgment and the enumerations will be dealt with hereinafter.

The complaint of Member Maddox, insofar as necessary to recite here, is as follows: That he was appointed a member of the Board on March 7, 1968, to fill an unexpired term and was confirmed by the Senate on March 7, 1968; that thereafter, on April 10, 1969, he was appointed for a full seven-year term as provided by the Georgia Constitution (Art. V, Sec. I, Par. XI), and on June 12, 1969, was confirmed by the Senate of Georgia.

The complaint also recites that immediately prior to his appointment for the full term on April 10, 1969, Governor Lester G.

Maddox demanded and required that he sign an undated resignation from the office to which he was about to be appointed; it also avers that during early June, 1970, a joint Senate-House committee undertook to investigate the practice of the Governor requiring an appointee to a constitutional office to sign an undated resignation; that on or about June 6, 1970, the chairman of that committee ascertained that Member Maddox had signed such a resignation; that on June 9, 1970, he received a letter from the chairman, which expressed disapproval and asserted the invalidity of the practice, and urged that he immediately withdraw his letter of resignation.

The complaint states further that immediately after Member Maddox had thus been contacted, Governor Maddox telephoned him and during that conversation Member Maddox requested that his resignation letter be returned to him, stating that he was then and there withdrawing it and repudiating it as illegal, unconstitutional, against public policy, null and void; the complaint also alleged that Member Maddox has faithfully performed the duties of his office.

The complaint continues that on December 30, 1970, Member Maddox was requested to appear before the committee and did so on January 7, 1971; that prior to his committee appearance on that date he went to his office and performed various duties as a member of the board; that after the committee had recessed for the day, Member Maddox was advised that the locks had been changed on the door to his office at the direction of the defendant Partain; that on the morning of January 8, 1971, he went to his office accompanied by his attorney and demanded of the defendant Partain that he be permitted to enter his office and resume his duties; and that he was then advised by the said defendant that the locks had been changed and he would not be permitted to enter his office.

The complaint also avers that he has not resigned his position and at the time he signed the undated resignation he had no intention of relinquishing his office, nor did he do so; that the defendant Partain is illegally and unlawfully interfering with him in the proper discharge of his duties as a member of the board; that it has been necessary for him to employ an attorney to rep-

resent him; and that the action and conduct of the defendant Partain, as aforesaid, is wilful and malicious.

The complaint prays in substance that rule nisi issue, that the defendant Partain be enjoined and restrained from interfering with Member Maddox in the discharge of his duties as a member of the board and from entering his office; and that he be awarded actual damages together with a stated sum as punitive damages.

Thereupon, the trial court entered an order temporarily restraining and enjoining the defendant Partain from preventing the plaintiff Maddox from entering his office as a member of the board.

By amendment the plaintiff made the following additional allegations; that on January 14, 1971, at 9:30 a.m., Member Maddox, accompanied by his attorney, went to his office at the board for the purpose of resuming his duties as a member; that at 11:15 a.m., the defendant Partain had not yet arrived, and the door to Member Maddox's office remained locked; that at that time he was handed two Executive Orders, both dated January 14, 1971, issued by the succeeding Governor, Jimmy Carter.

One of these orders alleged essentially that the plaintiff Maddox was appointed on April 10, 1969, as a member of the board under a secret agreement, and that such appointment was illegal; that said appointment was in violation of law and that he was not entitled to it; that while acting as a member of the board he engaged in other businesses and professions in violation of law and has failed to devote his full time to the duties of said office; that he has ceased to perform its duties; that he tendered his resignation as a member of said board and that it was accepted; and that therefore, the office was thereby declared vacant.

The other order recited that Richard A. Chappell was thereby appointed as a member of said board for a term beginning that date and ending January 1, 1976, to succeed the plaintiff Maddox, who had resigned.

The amendment makes other allegations which follow: That the appointment of Chappell as his alleged successor is illegal; that Member Maddox's appointment as a member of the board on April 10, 1969, as aforesaid, was not illegal; nor was his subsequent confirmation by the Senate on June 12, 1969, illegal; that he

has devoted his full time to his duties as a member of the board; that he has not abandoned his office; that he has not resigned therefrom; that E. J. Calhoun is presently acting as a member of the board and lives at a stated address; that Richard A. Chappell is a resident of a named county; that Member Maddox has not tendered any resignation to Governor Carter from his position as a member of said board; that there has been no judicial hearing in which it could be determined that Member Maddox had abandoned his office or that he was not devoting his full time to his duties as such member.

The prayers of the amendment are in essence that rule nisi issue; that Calhoun and Chappell be made parties; that they be enjoined and restrained from interfering with him as a member of the board pending an adjudication as to the title to the office; that quo warranto issue to Chappell requiring him to show cause why he should not be ousted from the office as a member of the board; that mandamus issue requiring the defendants Partain and Calhoun to recognize the plaintiff as a member of the board; and that he have general relief.

Thereupon, the trial court entered an order reciting in substance that the defendants Partain and Calhoun show cause why mandamus absolute should not issue requiring them to recognize Member Maddox as a member of the board; and that the defendant Chappell show cause why he should not be removed as a member of said board and why Member Maddox should not remain in office.

It should be pointed out that Mr. Chappell was not served, and was later dismissed as a party to the action.

The defendant Partain filed an answer to the complaint which denied its essential original and amendatory allegations. It avers, among other matters, that the plaintiff Maddox had tendered his resignation to Governor Maddox and that it was subsequently accepted.

The defendant Partain also alleges, as an affirmative defense and counterclaim, that while acting as a member of said board, the plaintiff Maddox engaged in the real estate business in violation of Code Ann. §§ 77-503, 77-510 (Ga. L. 1943, pp. 185, 186) and Code § 89-501 (7) and has ceased to perform the duties of his

office, and sought a declaration and judgment in quo warranto that the office claimed by the plaintiff Maddox is vacant.

Also, the defendant Partain filed a motion to dismiss the complaint as amended upon the grounds: (1) that it fails to state a claim upon which relief can be granted in equity, it appearing from the face thereof that the plaintiff Maddox has an adequate remedy in quo warranto; and (2) that it fails to join an indispensable party, to wit, Richard A. Chappell, it appearing from the face thereof that he is indispensable if complete relief is to be accorded in equity or in law between those already parties to the action.

Upon the interlocutory hearing, oral and documentary evidence was introduced.

Member Maddox testified, insofar as necessary to recite here, substantially as follows: that he was first appointed a member of the board on March 7, 1968, to fill an unexpired term and was thereafter confirmed by the Senate; that on April 10, 1969, he was appointed for a full seven-year term; and was also confirmed by the Senate. About April 8 or 9, 1969, prior to being sworn in, he signed an undated resignation at the request of then Governor Maddox; that in June 1970 he was visited by the chairman of a joint Senate and House committee of the General Assembly as to the practice of requiring such resignations; that upon request of the chairman he agreed to testify before it when it was to meet. He also testified that later that same day he received a telephone call from Governor Maddox concerning the letter of resignation, and that he requested Governor Maddox to return his letter and at the end of the conversation the Governor said "all right."

He further testified that subsequently, on January 7, 1971, when he appeared before the committee, he returned to his office and found that the locks had been changed so that he could not enter; and that upon arriving at his home that evening he learned of a telegram of that date addressed to him from Governor Maddox stating that his resignation had been accepted.

He then swore that the following day he and his attorney sought to enter his office but were told that he could not occupy the office.

He testified that he has not abandoned or resigned the office; that he signed the undated resignation because of his full faith

and confidence in the honesty and integrity of Governor Maddox and that he would not have asked him to do anything illegal or unconstitutional, or against public policy.

He identified the telegram of January 6, 1971, from Governor Maddox addressed to him reading as follows: "Please be informed that your resignation previously tendered to me is hereby accepted instanter."

He also identified several documents which were introduced by the defendant Partain in an effort to show that he was engaging in the real estate business in violation of law relative to tenure of office as a member of the board.

The defendant Partain testified in essential part as follows: that he had signed an undated resignation about two and a half years after his appointment, and had continued in office. He also gave some testimony on the issue pertaining to Maddox's ineligibility by reason of real estate activity.

Former Governor Lester G. Maddox, then Lieutenant Governor, identified the purported resignation letter from Member Maddox to him, and stated that it was signed at the time of the swearing-in ceremony, either a minute or two before or a minute or so after. He also identified his telegram to Member Maddox and swore that Member Maddox never stated to him that he was withdrawing that resignation.

He testified as to his practice of requiring undated resignations of appointees. The substance of this was that it would enable him to replace any person he deemed or determined to be unworthy; that he considered it his prerogative to terminate the tenure of any constitutional officer within the executive branch of the government by getting an undated resignation from him and holding it in abeyance, in order to promote government in the best interest of the State, the administration and the people; that when he stated to Member Maddox the purpose of the undated resignation letter, Member Maddox said, "Well, I fully agree with you"; that the foregoing was also his motive in accepting such resignations.

The documentary evidence introduced at the hearing included the undated resignation letter from Member Maddox addressed to Governor Maddox, reading as follows: "As we previously discussed, I find it necessary, for personal reasons, to submit my resignation,

asking your acceptance of the same." The evidence also included the two Executive Orders of succeeding Governor Carter, one declaring the vacancy in office and the other declaring the appointment of Richard A. Chappell to fill such vacancy.

Pursuant to this temporary hearing, the trial court entered an opinion which, as we interpret it, made in essence the following findings: (1) that there is no evidence of coercion or fraud; (2) that the prospective resignation was not against the public policy of this State and therefore void; (3) that since this practice was not void as against public policy, acceptance of the appointment was not a bar to equitable relief because of the unclean hands doctrine; (4) there being no statutory prohibition against the Governor requiring and obtaining a prospective resignation, and none to prevent him from accepting one tendered without duress or fraud, he was authorized to accept it; (5) that whether Member Maddox did or could withdraw a resignation is a mixed question of law and fact and requires submission to a jury for its determination; the fact that such a resignation was undated does not affect its validity; and (6) that there was no abandonment of office by Member Maddox.

Thereupon, the court ordered that the temporary restraining order heretofore granted be continued in full force and effect, pending further order and a jury trial on the issue of facts unresolved, since it appears that Member Maddox seeks to restrain other board members from preventing his exercise of the duties of his office which he denies he has vacated by resignation or abandonment.

The order also recited that the defendant Partain's motion to dismiss the complaint, "if sustained, would not prevent continuance of the restraining order"; but that such motion be sustained as to any adjudication of title to the office because of lack of parties.

The judgment, in sum, continued the temporary restraining order pending a jury trial; sustained ground 2 of the motion to dismiss the complaint urging lack of indispensable parties; but did not rule upon ground 1 asserting failure to state a claim due to adequate remedy in quo warranto.

The appeal and cross appeal are from this judgment. The de-

fendant Calhoun did not appeal.

The defendant-appellant Partain in the main appeal in substance enumerates the following as error:

1. In continuing, after the hearing, the temporary restraining order;

2. In not dismissing the complaint upon both grounds of his motion to dismiss;

3. In continuing the restraining order based upon an erroneous interpretation of law, to wit, "whether Member Maddox did or could withdraw a resignation is a mixed question of law and fact and requires submission to a jury to determine that issue";

4, 5. In declaring that the office claimed by Member Maddox was not vacant by his engaging in another business or profession and his failure to devote full time to its duties and not holding that he has engaged in another business or profession;

6, 8. In following *McLendon v. Everett*, 205 Ga. 713 (55 SE2d 119) and *Turner v. Wilburn*, 206 Ga. 149 (56 SE2d 285); in holding that the office was not vacated pursuant to *Code* § 89-501 (7); and in not applying *Code* § 89-501 (7); and in declaring that the office was not vacant by reason of engaging in another business or profession and failure to devote full time to it.

7. In declaring that the office claimed by Member Maddox was not vacant.

9. If, as Member Maddox contends, the court erred in not holding that his resignation was invalid, then the court erred: (a) in not holding that under the Constitution (Art. V, Sec. I, Par. XIII; *Code Ann.* § 2-3013) his resignation was given while serving as a member of the board and not given prior to his being initially sworn in; (b) in continuing the temporary restraining order in effect in favor of Member Maddox who had "unclean hands" in giving the resignation; (c) in not holding that his appointment was invalid by reason of giving such resignation.

Member Maddox, in the cross appeal, enumerates seven errors. Since numbers 6 and 7 encompass the contentions urged in all the enumerations, we deem it necessary to quote only those two, which are in material part as follows:

"6. The trial court erred in holding and ruling that the Governor of Georgia had the constitutional right to create a vacancy in

an office, the term of which was fixed by the Constitution of Georgia at seven years, by requiring the prospective appointee either before or immediately after such appointment to tender an undated resignation from such office, although it was not then contemplated by either party that the resignation would then and there take effect, but might at some remote uncertain day in the future be 'accepted' by the Governor . . .

"7. The Court erred in not holding that the Constitutional authority [to] fill a vacancy does not include the right to declare a vacancy exists, or to accept an undated resignation given years before."

■ We deem these enumerations of error to be meritorious. They are decisive of the determinative issues arising from the appeal and cross appeal.

What we consider to be of vital importance here is the provision of the Constitution of our State (Art. V, Sec. I, Par. XI; *Code Ann.* § 2-3011) which authorizes the Governor to appoint members to the State Board of Pardons and Paroles, and directs that "appointments shall be for a period of *seven years,* except for an unexpired term." (Emphasis supplied.)

As we regard it, the obtaining of the document in question here from the appointee at the time of his appointment was in clear violation of this provision of the Constitution. Instead of making a full-term appointment of seven years, the Governor, by virtue of the purported letter of resignation, attempted to make an appointment to continue only so long as he wished.

In our view, it matters not whether at the time the letter was procured Member Maddox was a "holdover" or not, or whether he was "in office" or "out of office." In making this ruling, it is unnecessary to determine the motives involved in this practice or to evaluate its effect upon the operation of state government. The procuring of the document in question and its subsequent employment cannot be the basis for a valid resignation.

This court has held that "A resignation of a public office, to be effective, must be made with the intention of relinquishing the office, *accompanied by the act of relinquishment." Patten v. Miller,* 190 Ga. 123, 141 (8 SE2d 757). (Emphasis supplied.) What occurred in the situation here did not comport with this requirement.

We have examined each of the authorities relied upon by the defendant Partain and cited in the trial court's order on the issue of resignation. Each is distinguishable from the instant situation.

Here the removal sought to be accomplished by the undated letter of resignation was violative of Member Maddox's vested legal rights.

In this connection, the landmark constitutional law decision of Marbury v. Madison, 1 Cranch (U. S.) 137, 162 (2 LE 60), has a claim here. The Supreme Court of the United States therein declared: "Mr. Marbury then, since his commission was signed by the president, and sealed by the secretary of state, was appointed; and as the law creating the office, gave the officer a right to hold for five years, independent of the executive, the appointment was not revocable, but vested in the officer legal rights which are protected by the laws of his country."

Here in Georgia, this court in *Holder v. Anderson,* 160 Ga. 433 (2) (128 SE 181) dealt with tenure of a public officer and held as follows: "The Governor of this State has no inherent power to remove a public officer, and he can only do so where the power is expressly given or arises by necessary implication under the constitution or statutes of this State; and where the constitution or statute authorizes appointment by the Governor, without any fixed tenure of office, the appointment is at the will of the Governor and may be revoked at his pleasure; but where the appointment is by the Governor under a statute which provides a fixed term for the office, the Governor has not the power of removal of an officer during the term for which he was appointed."

Since the document in question here did not constitute a valid resignation from his office by Member Maddox, no vacancy in this office was thereby created. This in effect was stated in the first headnote of *Patten v. Miller,* 190 Ga. 123, supra, as follows: "(d) While an office is vacated 'by resignation when accepted,' yet where an order of the Governor contained a specific recital of facts to show a resignation, and it appeared that the facts did not constitute a resignation in law, a declaration in his order that 'the resignation aforesaid . . . is hereby accepted' does not show a vacancy by resignation accepted . . . (f) The provision of the constitution (*Code* § 2-2614) to the effect that when any office shall

become vacant by . . . resignation, . . . the Governor shall have the power to fill such vacancy, confers no power to *create* a vacancy by any declaration or judgment that one exists; *there must be an actual vacancy before the power or duty of filling it arises."* (Emphasis supplied.)

We therefore hold that from what separately appears upon the face of the complaint as well as from the evidence at the temporary hearing, the purported resignation of Member Maddox was invalid. It was in effect an attempt to remove him contrary to law. Hence, no vacancy in office has been shown to have resulted upon this score.

(a) However, the appointment of Member Maddox for the full seven-year term of office was valid. It was made in absolute compliance with the Constitution and statutes of this State appertaining thereto. This feature is severable from the undated resignation issue.

■ The defendant Partain's affirmative defense and counterclaim in quo warranto asserts that Member Maddox vacated his office by engaging in the real estate business in violation of *Code Ann.* §§ 77-503 and 77-510 (Ga. L. 1943, pp. 185, 186), and that by virtue of *Code* § 89-501 (7) he ceased to perform the duties of his office. Five errors are enumerated on the trial court's not declaring the office vacant for one or both of these reasons.

We do not agree.

(a) *Code* § 89-501 provides in material part that, "All offices . . . shall be vacated—. . . (7). By abandoning the office and ceasing to perform its duties, or either."

As to abandonment creating a vacancy, the decision in *Patten v. Miller,* 190 Ga. 123, supra, is controlling here. Referring to the above Code section, this court stated inter alia in Headnote 1 (c): "But under this law a mere *charge* of misconduct in office on the part of the incumbent does not show abandonment; nor may the Governor, against the will of the incumbent, *declare* a vacancy upon any theory of abandonment *until the fact is ascertained in a judicial proceeding."* (Emphasis supplied.) Notice and hearing are required for due process.

Therefore, since neither the complaint nor the evidence shows any such judicial ascertainment, no abandonment is thus shown to have occurred here.

(b). We next deal with the contention asserting in substance that a vacancy resulted by virtue of Member Maddox's ceasing to perform his duties as a member of the board in violation of *Code Ann.* §§ 77-503 and 77-510.

It is not necessary to recite here the evidence offered in support of this claim, for it is not a factual question.

In making this contention, the defendant Partain seeks to distinguish the instant case from the situation in *McLendon v. Everett,* 205 Ga. 713, supra, *Turner v. Wilburn,* 206 Ga. 149 (56 SE2d 285) and *McLendon v. Wilburn,* 206 Ga. 646 (58 SE2d 423) on the ground that the alleged extra-official activities of Member Maddox constituted a "ceasing to perform" his duties as a full-time member of the board in violation of *Code Ann.* § 77-510, supra, and that his office was thus vacated under the provisions of *Code* § 89-501 (7). It is urged that the prohibition of *Code Ann.* § 77-510 against engaging in another business or profession and requiring full-time performance of duties can only be made effective by application together with *Code* § 89-501 (7), which provides specific grounds for vacating office; and that the trial court erred in failing to make that application and in relying on the decisions of *McLendon v. Everett* and *Turner v. Wilburn,* supra, where this point was not raised.

This contention is not meritorious.

Neither the provisions of the Constitution creating the State Board of Pardons and Paroles (Art. V, Sec. I, Par. XI; *Code Ann.* § 2-3011) nor the Acts providing for the powers and duties of the board (*Code Ann.* §§ 77-501, 77-502, 77-510; Ga. L. 1943, pp. 185-195) include any qualification of membership or any penalty by forfeiture of office for engaging in another business or profession.

Citing the *McLendon* and *Turner* cases, supra, this court stated for the third time in *McLendon v. Wilburn,* 206 Ga. 646 (1), supra, as follows: "As has been pointed out, there is nothing in the Act, defining the powers and duties of the State Board of Pardons and Paroles, which provides that the doing of certain acts by a member would operate as a forfeiture of his office."

The application urged by the appellant Partain, that the constitutional and statutory provisions be considered together, does not change this rule. Therefore, considered neither singly nor jointly

do these provisions work a forfeiture of the office. On this contention, the above full bench unreversed decisions of this court control adversely to him. The request to overrule the three cases is denied.

For the foregoing reasons, enumerations of error 4, 5, 6, 7, and 8 are not meritorious.

■ In view of the rulings made here in Divisions 1 and 2, Member Maddox continues to be the incumbent of the office. There was no vacancy created so as to authorize the appointment of Mr. Chappell by succeeding Governor Carter to the unexpired term of his appointment under *Code Ann.* § 2-3013.

From the record before us it does not appear that Mr. Chappell has taken the oath of office, or that he even claims it by virtue of such appointment. Therefore, from a consideration of either the complaint or the evidence there is no question as to title to office properly before the trial court in this proceeding insofar as Mr. Chappell is concerned.

(a) It follows that it was not necessary for Mr. Chappell to be a party to the action. Accordingly, the trial court erred in sustaining the ground of the motion to dismiss the complaint insofar as any adjudication of title to office because of the lack of proper parties is concerned.

(b) Since the trial court did not rule upon the other grounds of the motion to dismiss the complaint—which averred that it fails to state a claim upon which relief can be granted in equity since it appears from the face thereof that the plaintiff has an adequate remedy in quo warranto—we cannot here decide that issue. Therefore, there is no merit in the enumeration urging the overruling of *both* of those grounds.

■ The enumeration which complains of continuing the temporary restraining order is not meritorious.

The evidence showed, in substance, that Member Maddox was being locked out of his office and was being prevented from entering so as to perform his duties as a member of the board. The situation shown here is quite similar to that involved in *Patten v. Miller,* 190 Ga. 105 (8 SE2d 776) except that here the person preventing the entry is the chairman of the board who claims that Member Maddox has abandoned his office, whereas in that case a rival claimant was involved.

In that case this court ruled that, "Where an officer is in possession of an office, and another person, even though he be a claimant thereto, seeks to interfere by force with such possession, a court of equity, at the instance of the incumbent, will prevent such interference until right to the office has been determined in a proper proceeding. . . . 3. Even though an appointment may have been made to an office where the term of the incumbent has not expired, and in pursuance of the order of appointment the incumbent has been forcibly removed from the room or quarters of his office, and thereby deprived of the opportunity of exercising the duties of the office, such incumbent will in equity nevertheless continue to be treated as the incumbent for the purpose of protecting him in his right to function as such official, pending a judicial determination of the validity of such appointment."

In the situation here, Member Maddox, who is the incumbent of the office, is entitled to injunctive relief pending any determination of his right to the office.

(a) A different result is not required because of the maxim that he who seeks equity must do equity (*Code* § 37-106), the basis for the "clean hands" doctrine. The evidence upon the hearing did not establish this so as to preclude temporary injunctive relief.

It is significant that here the equitable relief is sought against the defendant Partain, not against Governor Maddox to whom Member Maddox, upon demand, previously gave the undated letter of resignation.

In this respect Member Maddox comes into court with clean hands with regard to the matter concerning which he asks such relief.

It should be borne in mind that he seeks relief against the defendant Partain from illegally denying him possession of his office. Therefore, no unclean hands are involved in this judicial action seeking to obtain rightful possession. His previous act in complying with Governor Maddox's demand for the undated resignation letter is unrelated to the relief sought here.

In this connection, this court has held: "The unclean-hands maxim which bars a complainant in equity from obtaining relief has reference to an inequity which infects the cause of action so that to entertain it would be violative of conscience. It must relate

directly to the transaction concerning which complaint is made. . . The rule . . . refers to equitable rights respecting the-subject-matter of the action. § 37-104. It does not embrace outside matters." *Atlanta Association of Fire Insurance Agents v. Mc-Donald,* 181 Ga. 105 (2) (181 SE 822). See also *Employing Printers Club v. Dr. Blosser Co.,* 122 Ga. 509 (50 SE 353, 69 LRA 90, 106 ASR 137, 2 AC 694).

For the foregoing reasons, continuing the temporary restraining order was not an abuse of discretion.

The foregoing are dispositive of all the enumerations of error filed by the appellant in the main appeal.

In our view the position taken by the appellant in the cross appeal should be sustained.

*Judgment in the main appeal affirmed in part, reversed in part; judgment in the cross appeal reversed. All the Justices concur.*